Cecil HAGGARD and Alpha Haggard, husband and wife, Appellees,

v.

Annie STUDIE, an heir of David Chuwalooky, a full Cherokee Citizen, and Leann Chuwalooky, a full blood Cherokee Citizen, Appellant.

No. 52053.

Court of Appeals of Oklahoma, Division No. 1.

April 8, 1980.

Released for Publication by Order of Court of Appeals May 8, 1980.

Shirk, Work, Robinson & Williams by William J. Robinson, Oklahoma City, and Davis & Thompson by Gene A. Davis, Jay, for appellees.

William J. Dale, Tulsa, for appellant.

BOX, Judge:

An appeal by Annie Studie, one of the defendants below, from a judgment rendered in favor of Cecil and Alpha Haggard in a quiet title action.

The Haggards were successful in the trial court in quieting title to 420 acres they claim and occupy in Delaware County, Oklahoma. This appeal concerns only 160 of these acres, which the Haggards claim by adverse possession. The Appellant, one of the numerous heirs of David and Leann Chuwalooky, who were defendants below, challenges the title of the Haggards on the ground that their predecessors in title procured deeds to the land in question by fraud and duress, thus tolling the statute of limitations and making it impossible for Appellees to obtain title thereto by adverse possession.

The record reveals that the parcel of land in dispute consists of three tracts. Tract one was allotted to David Chuwalooky, a full blood Cherokee Indian, by the Cherokee Nation. Mr. Chuwalooky died intestate prior to 1911, and no court proceedings were held to distribute his estate. Frank Haggard, predecessor in title of the Haggards, petitioned the Delaware County Court for approval of a warranty deed to tract one from Chuwalooky's ascertained heirs, and the deed was approved and recorded in 1911.

Tracts two and three were allotments to Leann Chuwalooky, wife of David and a full blood Cherokee. She died intestate prior to 1913 and no court determined her heirs or the distribution of her estate. Nellie Williams obtained approval of deeds to these tracts from the ascertained heirs of Mrs. Chuwalooky in the Delaware County Court in 1913. Frank Haggard succeeded to Nellie Williams' interest in 1919. All deeds were recorded. The Haggards derive

their title from Frank Haggard, and they and their predecessors in interest have been in actual possession of the land since the dates of the recorded deeds. No formal adverse claim had ever been made to this land until this suit was brought.

Appellant concedes that the Haggards have been in actual possession for the requisite fifteen year statutory period to establish title by adverse possession. See 60 O.S.1971, § 333 and 12 O.S.1971, § 93(4). Appellant also concedes that the statutes of limitations of this State apply to members of the Five Civilized Tribes, and thus apply to her as a Cherokee Indian. The Act of April 12, 1926, 44 Stat. 239, firmly established that fact. This Act was interpreted in *Wolfe v. Phillips*, 172 F.2d 481, at p. 484 (10th Cir. 1949), wherein that court stated:

It will be observed that § 2 of the Act of April 12, 1926 set out in Note 3, provides that the statutes of limitations of the State of Oklahoma shall be applicable to and shall have full force and effect against all restricted Indians of the Five Civilized Tribes and against their heirs or grantees, to the same extent and effect and in the same manner as in the case of any other citizen of the State of Oklahoma, and may be pleaded in bar of any action brought by any such Indian, his heirs or grantees, or by the United States or any other party for the benefit of such Indian, his heirs or grantees, to the same extent as though such action were brought by or on behalf of any other citizen of such state.

And that court further stated that this was the case "irrespective of whether such deed was valid or void." 172 F.2d at 486.

However, Appellant asserts the statute of limitations was tolled because fraud and duress were used in procuring the original deeds. For this contention Appellant relies on the following language of the Act of August 4, 1947, 61 Stat. 734, which states at Section 9:

That all conveyances, including oil and gas or mineral leases, by Indians of the Five Civilized Tribes in Oklahoma of lands acquired by inheritance or devise, made after the effective date of the Act of January 27, 1933, and prior to the effective date of this Act, that were approved either by a county court in Oklahoma or by the Secretary of the Interior are hereby validated and confirmed: *Provided, That if any such conveyance is subject to attack upon grounds other than sufficiency of approval or lack of approval thereof, such conveyance shall not be affected by this Act.* [Emphasis added by this Court.]

 The United States Congress through legislative enactments beginning in 1906 created procedures for dealing with restrictions on land allotted to the Five Civilized Tribes. The purpose of these Acts was to protect the Indian from overreaching by members of other races. *Armstrong v. Maple Leaf Apartments, Ltd.*, 508 F.2d 518, 521–22 (10th Cir. 1974). The 1947 Act is but one of many within a general scheme; however, this Act is very specific and by its very language applies only to "conveyances . . . made after the effective date of the Act of January 27, 1933." The conveyances we are concerned with on this appeal were made in 1911 and 1913. In *Brown v. Stufflebean*, 187 F.2d 347, 356 (10th Cir. 1951), that court explained the effect of the 1947 Act as follows:

The Act of August 4, 1947, 61 Stat. 731, prescribes a wholly different method for the alienation of lands of this character by Indians of one-half or more of Indian blood, *but it is not retroactive and not a construction of the 1933 Act.* [Emphasis added by this Court.]

Thus, the 1947 Act is not applicable to conveyances made prior to the effective date of the 1933 Act and is inapplicable here.

Even if the Act did apply, however, it would still not benefit the Appellant in the present case. In *Brown, supra,* the federal court stated, at 353:

[A] mere allegation of fraud does not vitiate the deeds or void the orders of approval. The County Court had jurisdiction to approve the deeds, and its orders thereon "are entitled to the same

favorable presumption and the same immunity from collateral attack as are accorded those of other courts of general jurisdiction." *Bradburn v. McIntosh,* [159 F.2d 925, 930 (10th Cir. 1947)]. *Having alleged a fraudulent scheme, it was incumbent upon the appellants to prove it by competent and convincing evidence.* [Emphasis added by this Court.]

■ It is undisputed that the Haggards obtained the appropriate approval for the deeds pursuant to the Act of May 27, 1908, 35 Stat. 312. The 1908 Act was the only act which could have been applicable at the time the conveyances were made. Therefore, the deeds are valid unless Appellant could prove fraud in the procurement by competent and convincing evidence. This she admits she was unable to do, because the last witness to the alleged fraud was dead at the time of trial and testimony by Appellant's witnesses was excluded as hearsay. Appellant contends that the testimony was admissible under an exception to the hearsay rule, but she relates no such exception to us and we have found none.

We find that the trial court was correct in finding no fraud in the procurement of the deeds.

Appellant also asserts that even absent a showing of fraud, the statute of limitations should have been tolled because of other factors present in this case. The thrust of this argument is that each person is guaranteed a right of access to the courts by virtue of the Fifth and Fourteenth Amendments to the U. S. Constitution and by Article 2, §§ 6 & 7 of the Oklahoma Constitution.

■ The Appellant claims her access to court was "chilled" by the presence of the Plaintiff-Appellee, Cecil Haggard, being employed as the Court Clerk in Delaware County. She relies on *Silver v. Cormier,* 529 F.2d 161 (10th Cir. 1976), in which the plaintiff was threatened by a public official. That court found at 163:

Access to the courts of the United States is a constitutional right guaranteed by the due process clauses of the fifth and fourteenth amendments. *Harbolt v. Alldredge,* 10 Cir., 464 F.2d 1243, 1244, *cert.*

*denied,* 409 U.S. 1025, 93 S.Ct. 473, 34 L.Ed.2d 319; *Evans v. Moseley,* 10 Cir., 455 F.2d 1084, 1087. This right of access to the courts cannot be infringed upon or burdened. *Adams v. Carlson,* 7 Cir., 488 F.2d 619, 630. A public official's threats to a citizen to withhold monies due and owing, should legal proceedings on an independent matter be instituted, burdens or chills constitutional rights of access to the courts. And this is true although the threat is not actually effective.

The reasoning of that court is sound, but does not apply in this case because the circumstances are different. Although Mr. Haggard has been in the Court Clerk's office since 1938, there is no evidence he threatened any defendant. Appellant concedes this, but asserts Haggard's mere presence in the office was a "sufficient threat to justice and access to court, particularly to the poorly-educated Indian heirs." She also asserts a "pattern of discrimination" in the Delaware County Courts and indigency of the Indian heirs as precluding access to court. Appellant cites us little authority for these assertions, and that authority which is cited is not applicable. It is sufficient to say that the Haggards have been in possession of the land for at least sixty years and have erected buildings, farmed, paid taxes, and performed other acts which tended to prove their claim thereto. In all those sixty years no one came forward to claim the land until the Haggards brought this suit. The evidence shows no wrongdoing by them, and the latter assertions of the Appellant are unfounded.

■ A quiet title action is of equitable cognizance and will not be reversed on appeal unless clearly against the weight of the evidence. *Olsen v. Jones,* Okl., 412 P.2d 162, 167. We affirm the trial court's findings.

AFFIRMED.

REYNOLDS, P. J., and ROMANG, J., concur.